**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| YANATHA DESOUVRE, on behalf of his minor children, J.D. and A.D., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DISNEY WORLDWIDE SERVICES, INC., a corporation, and DISNEY ENTERTAINMENT OPERATIONS LLC, a limited liability company,<br><br>Defendants. | **Case No.: 6:25-cv-1878-RBD-LHP** |

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendants Disney Worldwide Services, Inc. and Disney Entertainment Operations LLC ("Disney") move this Court under Fed. R. Civ. P. 12(b)(6) to dismiss the First Amended Complaint ("FAC") filed by plaintiff Yanatha Desouvre ("Desouvre") on behalf of his minor children, J.D. and A.D. ("Minors" and collectively, "Plaintiffs") and submit this memorandum of law in support:

## PRELIMINARY STATEMENT

This action ("Action") arises from Desouvre's attempt, on behalf of the Minors, to challenge Disney's designations of content on the YouTube platform—designations that Plaintiffs claim allowed YouTube, a non-party, to collect the Minors' personal information. Every claim in the FAC rests on the same premise: that Disney, as a YouTube "Channel Owner," violated the Children's Online Privacy Protection Act ("COPPA") by allegedly mis-designating certain videos as "not made for kids" ("NMFK") when they should have been designated "made for kids" ("MFK") under YouTube's internal instructions. In Plaintiffs' telling, Disney's supposed failure to comply with COPPA triggered YouTube's collection of the Minors' data. Plaintiffs' theory is facially flawed on multiple grounds, and supports dismissal of the FAC for failure to state a claim.

First, Plaintiffs' FAC concedes that while Disney uploads content to the YouTube platform, YouTube—and not Disney—operates the platform, controls the advertising and data-collection systems, and determines what information is gathered from viewers. Critically, Plaintiffs do not allege that Disney collects, receives, stores, or even has access to any child's personal information. Nor do they

allege that Disney possesses any data about the Minors. All of the purportedly violative or tortious conduct complained about by Plaintiffs, if it even occurred, would have resulted from the actions taken by the only entity alleged to collect data, YouTube—a party Plaintiffs chose not to sue. Indeed, the only district court to address the precise theory advanced here – that purported COPPA violations by Channel Owners on YouTube create other statutory and common law exposure – has rejected it outright. In *Hubbard v. Google, LLC et al.*, No. 5:19-cv-07016-SVK, 2025 WL 82211, at *16-19 (N.D. Cal. Jan. 13, 2025), the court dismissed all claims against Channel Owners, holding that because channel owners "unquestionably" did not collect user data on the YouTube platform, there was no liability under COPPA, and dismissed the claims that were predicated upon COPPA liability. Plaintiffs' own allegations here compel the same conclusion: YouTube, not Disney, owns and operates the platform, controls the advertising and data-collection technologies, and determines what user information is collected and how. As in *Hubbard*, this Court should dismiss the FAC in its entirety as it is directed against the wrong defendant.

Second, Plaintiffs fail to plead any of the content that they watched. With respect to the fundamental issue of whether the Minors actually viewed mis-designated content, Plaintiffs allege, "upon information and belief," that they did. Plaintiffs, however, have no basis to assert ignorance as to the channels and videos watched by the Minors, particularly where the Plaintiffs otherwise allege specific channels that they claim were mis-designated, as well as observable functionality of NMFK content. Nor do they allege when they viewed content that was purportedly

mis-designated, irrespective of their concession that such designations change over time.

Plaintiffs' failure to plead these foundational facts is fatal: it leaves Disney without notice of the basis for the claims, and defeats every cause of action. Moreover, even if Plaintiffs had alleged the specific videos, channels, and dates of viewing, their claims would still fail as a matter of law. The FAC does not establish that Disney owed any duty to the Minors, engaged in any actionable conduct, caused any injury, or violated any statute that could support the asserted theories. In short, the absence of factual allegations about what the Minors viewed is dispositive, and the legal defects specific to Plaintiffs' claims independently require dismissal.

## BACKGROUND

***Procedural History.*** On September 2, 2025, the United States Department of Justice, upon notification from the Federal Trade Commission ("FTC"), filed a complaint against Disney in the Central District of California, captioned *United States of America v. Disney Worldwide Servs., Inc. et al.*, No. 2:25-cv-08223-GW-RAO ("DOJ Complaint"),[1] with a stipulation reflecting the parties' agreed settlement ("DOJ Settlement"). The DOJ Settlement followed contested negotiations over claims that Disney violated COPPA by allegedly uploading certain "child-directed" videos to YouTube without designating them as MFK. (Feb. 11, 2026 Declaration of Matthew

---

1 The Court may consider documents referenced in the FAC on a motion to dismiss, including the DOJ Complaint and DOJ Settlement. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

C. Luzadder ("Luzadder Decl."), Ex. A.)[2] Disney disputes, among other things, that it mis-designated videos and that COPPA applied to its use of the YouTube platform, given that only YouTube—and not Disney—collected user data. (*Id.*) As part of the DOJ Settlement, Disney agreed to implement certain injunctive relief.

In the weeks following the filing of the DOJ Complaint, plaintiffs' firms filed a series of putative class actions across the country based on the same underlying allegations. (Dkt. 10.) This Action is the ninth copycat case to be filed and asserts allegations nearly identical to those in the earlier-filed class actions. Counsel for the plaintiffs in all related cases—except this one—coordinated their efforts and sought consolidation before Judge George Wu in the Central District of California, who consolidated the seven pending actions for all purposes, including trial, on December 17, 2025. (Dkt. 23-1, Ex. R.) Judge Wu entered the DOJ Settlement on December 29, 2025. (Luzadder Decl., Ex. B.)

Plaintiffs filed the FAC on November 3, 2025. (Dkt. 20.) On January 5, 2026, Disney filed its motion seeking transfer or a stay pursuant to the first-filed rule and 28 U.S.C. § 1404(a). (Dkt. 23.) Plaintiffs opposed on January 23, 2026 (Dkt. 28), and the transfer motion is now fully briefed.

***YouTube's Platform.*** Google LLC and YouTube, LLC (collectively, "YouTube") operate an ad-supported video-sharing platform called "YouTube"

---

[2] The Declaration of Matthew C. Luzadder is filed contemporaneously with Disney's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

where, free of charge, users post videos on their "channels" and view videos posted by others. (FAC ¶¶ 2, 24, 26.) Disney, like other "Channel Owners" on YouTube, created video channels on which it uploaded and shared video content with the public. (*Id.* ¶¶ 24, 39, 40.) YouTube's users can access channels or videos free of charge and without logging in to search or browse the YouTube catalog. (*Id.* ¶ 25.)

Per the FAC, YouTube uses two types of advertising that support the platform—contextual and behavioral. (*Id.* ¶ 32.) Contextual advertising delivers ads to individuals based on the content that the viewer is watching and behavioral advertising delivers ads based upon the individual's viewing history. (*Id.* ¶¶ 33-34.) To display behaviorally targeted advertising, YouTube collects certain information about users of its platform. (*Id.* ¶ 35.)

In 2019, YouTube entered into a settlement with the FTC to resolve allegations that YouTube had knowingly collected personal information from children in violation of COPPA. (*Id.* ¶¶ 52-54.) The settlement required YouTube to create a system for Channel Owners to designate whether their content on the YouTube platform is "directed to children" by identifying videos or channels as MFK or NMFK. (*Id.* ¶¶ 54-57.) Per the settlement, when a Channel Owner designates their video as MFK, YouTube is required to stop collecting personal information (including persistent identifiers used for targeted advertising) from viewers. (*Id.* ¶ 60.) As acknowledged in the FAC, YouTube also in many instances, redesignated certain videos without input from the Channel Owners. (*Id.* ¶ 80.)

***Disney Content on YouTube.*** Disney uploads and publishes its content to its YouTube video channels, with each channel associated with particular Disney brands, experiences, or franchises. (*Id.* ¶ 39.) According to Plaintiffs, Disney has "uploaded tens of thousands of videos" on YouTube and has over 1,250 channels. (*Id.* ¶¶ 40, 42.) Disney had historically created and continues to create separate YouTube channels for adults and children. (*Id.* ¶¶ 39, 75.) Disney's child-directed channels map to brands that are dedicated to child audiences, such as Disney Junior and the Disney Channel television network. (*Id.* ¶ 39.) Thus, when YouTube instructed Disney and other Channel Owners to designate content as MFK or NMFK, either at the video or channel level, Disney set its YouTube audience designations by channel. (*Id.* ¶ 71.)

Crucially, Channel Owners like Disney do not collect or receive personal information from YouTube users (*Hubbard*, 2025 WL 82211, at *16), and the FAC itself acknowledges this. Consistent with the DOJ Complaint, the FAC concedes this fact. (FAC ¶ 43 ("Disney's presence on the YouTube platform allows it to . . . collect significant personal information from its users through the YouTube Partner Program"); *see also id.* ¶¶ 44–45 (alleging that Disney had only "indirect" access to aggregate analytics from YouTube—not to any user-level data); Luzadder Decl., Ex. A. at ¶ 38 (alleging "Disney's failure to accurately designate child-directed videos as MFK results in ***YouTube*** collecting personal information….") (emphasis added).)

***Plaintiffs' Alleged Activity on the Disney YouTube Channels.*** Plaintiffs claim that the Minors watched, on YouTube, unspecified Disney content on unspecified dates over a purported six-year period. (FAC ¶ 12.) Plaintiffs posit that, ***upon information and belief***, from 2019 to the filing of this Action, and at least "twice weekly," the Minors viewed videos that Disney did not designate as MFK, but were "clearly directed at children." (*Id.* ¶¶ 12, 98-99.) Plaintiffs identify no specific videos or channels—despite alleging that Disney operates 1,250 YouTube channels with "tens of thousands of videos." (*Id.* ¶¶ 39, 40, 42.) Nor do they allege even approximate dates or times when the Minors purportedly watched any video or channel. Indeed, while Plaintiffs allege that "child-directed" content appeared on certain Disney channels designated as NMFK, they do not allege that the Minors viewed content on those channels. (FAC ¶ 75.) Plaintiffs also assert that MFK videos and channels have certain features disabled, such as comments and targeted advertising, but they do not allege that any of the Disney content the Minors viewed had such features enabled. (*Id.* ¶¶ 61, 65.) As for injury, Plaintiffs claim that the Minors' unspecified data was collected and "exploited for targeted behavioral advertising." (*Id.* ¶¶ 94, 99.) Yet they do not allege that the Minors ever saw a targeted advertisement, identify the content of any such advertisement, or even assert that any ad was delivered to them at all.

***Plaintiffs' Claims.*** Plaintiffs assert the following claims: (1) invasion of privacy – intrusion upon seclusion; (2) trespass to chattels; (3) negligence; (4) unjust enrichment; (5) violation of The Florida Deceptive and Unfair Trade Practices Act,

Fla. Stat. §§ 501.201 *et seq.* ("FDUTPA"); and (6) violation of the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq*. ("ECPA"). Plaintiffs seek to represent a nationwide and Florida subclass of "[a]ll [minors] who, at any time between November 1, 2019, and September 2, 2025, were under 13 years old and watched child-directed content that was uploaded by Disney on YouTube and not marked [MFK]." (FAC ¶ 104.) Plaintiffs also seek certain injunctive relief. (*Id.* ¶¶ 127, 178, 186-87, 205.)

## ARGUMENT

## I. THE FAC SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Applying this standard, the FAC should be dismissed in its entirety.

### A. Plaintiffs' Claims Should Be Dismissed Because They Have Not Plausibly Alleged that the Minors Viewed Mis-Designated Videos

Plaintiffs allege that Disney makes available "tens of thousands" of videos across over 1,250 channels on YouTube. (FAC ¶¶ 39-40, 42.) Yet the FAC contains no allegations regarding the percentage or scope of videos Plaintiffs claim were improperly designated. Instead, Plaintiffs allege only that, in June 2020, YouTube notified Disney of approximately 300 videos that were incorrectly designated as NMFK. (*Id.* ¶ 80.) From these limited allegations, Plaintiffs allege —"upon information and belief"—that the Minors viewed videos that Disney did not designate as MFK, but which were "directed at children." (*Id.* ¶¶ 12, 98-99.)

This unsupported conclusion, upon information and belief, is implausible and need not be accepted as true. *In re: Zantac (Ranitidine) Prods. Liab. Litig.*, 546 F. Supp. 3d 1192, 1201 (S.D. Fla. 2021) ("[T]he court need not accept as true allegations upon information and belief that lack sufficient facts to make the allegations plausible."). Without allegations on what videos Minors watched, when they watched them, and on which channel, as well as the browser or device used, Disney lacks notice of the claims and cannot even begin to investigate them. To the extent Plaintiffs' claims arise out of YouTube interactions through a non-logged in status, it is unclear that Disney could even request records from YouTube regarding the Minors' activities.

Plaintiffs' omission of these basic facts is especially glaring because the FAC acknowledges that certain features, like comments, exist only on NMFK videos and are disabled for MFK content. (FAC ¶ 84.) Yet Plaintiffs do not allege that the Minors encountered or used any of those NMFK-only features, or any other basis to support that they may have viewed video not designated as MFK. In short, Plaintiffs do not allege anything that would support their conclusion that the Minors viewed content that was allegedly improperly designated. Without factual allegations identifying what the Minors watched, when they watched it, or whether any of the content had features consistent with NMFK content, Plaintiffs cannot plausibly allege that the Minors viewed an improperly designated video—much less that their personal information was collected as a result. This defect is fatal to every claim.

### B. <u>Plaintiffs' Common Law Claims Fail Because They Do Not Allege the Governing State Law</u>

Plaintiffs assert four common law claims against Disney but fail to allege the law governing those claims. District courts routinely hold that a plaintiff's failure at the pleading stage to identify which state law applies to common law claims brought on behalf of a nationwide class warrants dismissal. *See, e.g.*, *Boxy, LLC v. Jay at Play Int'l Hong Kong, LTD*, No. 20-80893-CIV, 2021 WL 1226388, at *10 (S.D. Fla. Mar. 31, 2021); *Augustine v. Talking Rain Bev. Co.*, 386 F. Supp. 3d 1317, 1333 (S.D. Cal. 2019); *Nathan v. Whirlpool Corp.*, 492 F. Supp. 3d 747, 759-60 (S.D. Ohio. 2020). That is because, where, as here, a plaintiff fails to identify the governing state law, the Court cannot determine whether the complaint plausibly alleges a valid claim under the applicable law. *Nathan*, 492 F. Supp. 3d at 760. The need to identify the governing state law is especially crucial when, as here, there are substantive differences in the elements of those common law claims. *Id*. at 759. Plaintiffs' common law claims should therefore be dismissed or alternatively, Plaintiffs should be required to plead the state law applicable to each. For purposes of this Motion, and without conceding that it applies, Disney applies Florida law to analyze Plaintiffs' common law claims.

### C. <u>Plaintiffs' Intrusion Upon Seclusion Claim Fails on Its Face</u>

To plead a claim for intrusion upon seclusion, which is an intentional tort under Florida law, Plaintiffs must plausibly allege Disney: (1) intentionally intruded upon the Minors' private quarters; and (2) that the intrusion would be highly

offensive to a reasonable person. *See Hammer v. Sorensen*, 824 F. App'x 689, 695 (11th Cir. 2020) (citing Restatement (Second) of Torts § 652B).

***No Actionable Intrusion*.** Plaintiffs do not—and cannot—allege that Disney committed any intentional intrusion upon the Minors' private quarters. Their allegations, at most, assert that Disney played some role in purportedly enabling YouTube to collect user data. But merely creating an opportunity for a third party to act is not the "intentional intrusion" Florida law requires. *Id.* at 696. Even if Plaintiffs had alleged that Disney itself accessed or collected information about Minors' YouTube activity—which they do not—the claim would still fail. Florida law requires an intrusion into a "private place" or "private quarter," not merely a "private activity." *Hammer*, 824 F. App'x at 695–96. Courts applying Florida law consistently hold that alleged tracking of browser activity on a public website does not constitute a physical or electronic entry into a private place. *See, e.g.*, *W.W. v. Orlando Health, Inc.*, No. 6:24-cv-01068, 2025 WL 722892, at *9 (M.D. Fla. Mar. 6, 2025) (dismissing intrusion claim based on alleged tracking tools because "web browser 'conversations'" on a public website are not private quarters); *Bradley v. City of St. Cloud*, No. 6:12-cv-01348, 2013 WL 3270403, at 4–5 (M.D. Fla. June 26, 2013) (dismissing claim where defendant allegedly viewed the plaintiff's medical records for failure to allege intrusion "into her home or another private place"); *Watts v. City of Hollywood*, 146 F. Supp. 3d 1254, 1267–68 (S.D. Fla. 2015).

This is not surprising. The Eleventh Circuit has analogized surfing the web to navigating public highways. *See United States v. Taylor*, 935 F.3d 1279, 1284 n.4 (11th Cir. 2019). And "there is no reasonable expectation of privacy in a public place, such as on a public street." *Clemen v. Surterra Holdings, Inc.*, No. 8:23-cv-02796, 2024 WL 3785904, at *3 (M.D. Fla. Aug. 13, 2024). Conduct on a publicly accessible website bears no resemblance to activity undertaken in "solitude," even if the browsing occurs at home, because the user has voluntarily disclosed their presence to the website operator. *See Jacome v. Spirit Airlines Inc.*, No. 2021-000947, 2021 WL 3087860, at *6–7 (Fla. Cir. Ct. June 17, 2021).

***Highly Offensive Conduct*.** Plaintiffs also fail to plausibly allege conduct that is "highly offensive to a reasonable person." *Oppenheim v. I. Sys., Inc.*, 695 F. Supp. 2d 1303, 1309-10 (M.D. Fla. 2010), *aff'd*, 627 F.3d 833 (11th Cir. 2010). Courts in the Eleventh Circuit equate this standard with the "outrageousness" requirement for intentional infliction of emotional distress—conduct "utterly intolerable in a civilized community" and "beyond all possible bounds of decency." *Id.* Plaintiffs' allegations fall far short of that demanding threshold.

Plaintiffs allege an intrusion into the Minors' "online activities" and "online communications" (FAC ¶ 117), based on YouTube's alleged collection of "personal data from children, including persistent identifiers (like cookies and device IDs)." (*Id.* ¶ 3.) Courts applying the Eleventh Circuit's outrageousness standard have rejected intrusion claims involving far more sensitive information than what is alleged here—

including credit reports, unredacted Social Security numbers, private medical records, and attorney-client communications. *See, e.g.*, *Celestine v. Cap. One*, No. 1:17-cv-20237, 2017 WL 2838185, at *4 (S.D. Fla. June 30, 2017); *Stasiak v. Kingswood Co-Op, Inc.*, No. 8:11-cv-01828, 2012 WL 527537, at *3 (M.D. Fla. Feb. 17, 2012); *Regions Bank v. Kaplan*, No. 17-15478, 2021 WL 4852268, at *13 (11th Cir. Oct. 19, 2021); *Post-Newsweek Stations Orlando, Inc. v. Guetzloe*, 968 So. 2d 608, 613 (Fla. Dist. Ct. App. 2007). If the disclosure of such inherently private information is not "highly offensive," the routine collection of persistent identifiers online plainly is not.

Nor does the analysis change simply because the alleged conduct involved minors. Courts have rejected intrusion claims based on the tracking of children's online activity where the conduct was no more offensive than tracking adult users. *See, e.g., In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 294 (3d Cir. 2016) (rejecting "claim that the use of cookies to track *children* is particularly odious" in context of intrusion claim). The alleged conduct is simply not the type that would cause "mental distress" to a reasonable person. *Jarvis v. City of Daytona Beach*, 754 F. Supp. 3d 1197, 1229 (M.D. Fla. 2024). Accordingly, this claim must be dismissed.

### D. Plaintiffs' Trespass to Chattels Claim Fails

Trespass to chattels is an intentional tort, and Florida law requires a plaintiff to allege that the defendant itself intentionally used or interfered with the plaintiff's personal property. *See Burshan v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 805 So. 2d 835, 846 (Fla. Dist. Ct. App. 2001) (internal citation omitted). Plaintiffs here allege an "unauthorized digital intrusion" resulting in YouTube supposedly acquiring the

Minors' "personal information." (FAC ¶¶ 129–32.) But the FAC does not allege—nor could it—that Disney intentionally accessed, used, or interfered with the Minors' devices. At most, Plaintiffs claim that Disney played some role in enabling YouTube to collect data. That is not intentional interference by Disney and cannot satisfy the threshold element of this tort.

The claim independently fails for two additional reasons: (1) personal information is not a "chattel" under Florida law, and (2) Florida courts do not extend trespass-to-chattels liability to alleged intrusions in cyberspace. First, "[p]ersonal chattels are properly things movable, which may be carried about by the owner; such as animals, household stuff, money, jewels, coin, garments, and everything else that can be put in motion and transferred from one place to another." *Burshan,* 805 So. 2d at 846. Intangible property—such as personal information—does not qualify. *See Bain v. Jockey Club Tech. Servs., Inc.*, No. 9:07-cv-80371, 2007 WL 9706994, at *1, 4 (S.D. Fla. Oct. 2, 2007) (dismissing claim based on alleged planting of software that damaged websites, reconfigured computers, and collected sensitive personal information); *see also Burshan*, 805 So. 2d at 846 (affirming dismissal of a trespass claim because a bank account is not a chattel).

Second, a trespass to chattels claim does not apply to alleged intrusions into cyberspace under Florida law. *See Dish Network LLC v. Fraifer*, No. 8:16-cv-02549, 2017 WL 3701141, at *2 (M.D. Fla. July 21, 2017) (finding that Defendants "had failed to explain how … [URLs] … constitute 'chattels' … under Florida law); *see Inventory Locator Serv., LLC v. Partsbase, Inc.*, No. 2:02-cv-02695, 2005 WL 2179185, at

*12 (W.D. Tenn. Sept. 6, 2005) (applying Florida law to dismiss trespass to chattels claim involving "unauthorized access to … electronic database"). Plaintiffs' trespass-to-chattels claim should, therefore, be dismissed.

### E. Plaintiffs Fail to Plead Negligence

To state a claim for negligence under Florida law, Plaintiffs must allege that Disney: (1) owed them a duty, (2) breached that duty, (3) proximately caused their alleged injury, and (4) caused cognizable damages. *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003). Plaintiffs' negligence claims fail at every step.

***No Legal Duty or Breach*.** A negligence claim requires the existence of a legal duty recognized by law. *Lee v. Harper*, 328 So. 3d 384, 387 (Fla. Dist. Ct. App. 2021). Plaintiffs allege—conclusorily—that Disney owed a duty to safeguard children's "privacy and personal information." (FAC ¶ 135.) But they plead no facts establishing any special relationship between Disney and the Minors that could give rise to such a duty. Instead, Plaintiffs' negligence theory rests almost entirely on the assertion that Disney violated duties imposed by COPPA and is therefore liable for negligence per se. (FAC ¶¶ 140–44.) That theory fails.

To start, courts routinely hold that negligence per se claims cannot be premised on alleged violations of a federal statute that does not provide a private right of action—such as COPPA[3]—because it would be "inconsistent with the

---

[3] *Jones v. Google LLC*, 73 F.4th 636, 641 (9th Cir. 2023) ("COPPA does not authorize a private right of action.")

legislative scheme." *In re GE/CBPS Data Breach Litig.*, 20 CIV. 2903, 2021 WL 3406374, at *10 (S.D.N.Y. Aug. 4, 2021); *see also Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1365–66 (S.D. Fla. 2015) (collecting cases). Plaintiffs cannot use negligence per se to manufacture a private right of action where Congress declined to create one.

Second, the claim fails for an even more fundamental reason: Disney did not collect the information at issue and therefore cannot have violated COPPA. As the Northern District of California recently held in dismissing similar claims against Channel Owners, "the fact remains that [the channel owners] did not collect any of Plaintiffs' information. Without such collection, no violation [of COPPA] occurs." *Hubbard*, 2025 WL 82211, at *16. The *Hubbard* court therefore dismissed all claims premised on purported COPPA violations. Plaintiffs advance the same theory here—that YouTube, not Disney, collected the data at issue. (FAC ¶¶ 44–45.) A defendant cannot be negligent for failing to comply with statutory duties that apply only to entities engaged in conduct Plaintiffs concede Disney did not perform.

Third, COPPA's text confirms that there is no claim of negligence per se against Disney. The statute applies only to an "operator" of a "website or online service" that collects children's personal information. 15 U.S.C. § 6502; 16 C.F.R. § 312.3. Plaintiffs allege that YouTube—not Disney—is the "operator" of the online service at issue. Plaintiffs assert that YouTube owns and controls the platform, implements the advertising and tracking technologies, and determines what user data is collected and how. (FAC ¶¶ 24–38, 56–67.) Disney's role is limited to uploading

and applying settings to its videos to YouTube's platform. (*Id.* ¶¶ 28, 39-42.) That conduct does not make Disney an "operator," and even if it did, *Hubbard* confirms that an entity that does not collect user data cannot violate COPPA.

Finally, even if Plaintiffs could identify a cognizable duty owed by Disney, the negligence claim still fails because the FAC alleges no breach as to the Minors. Plaintiffs do not allege that Disney collected their information, accessed their information, transmitted their information, or took any action directed at them. Their theory depends entirely on the premise that the Minors viewed improperly designated videos, yet the FAC does not identify a single video the children watched, when they watched it, or whether it was mis-designated. Without factual allegations tying Disney's conduct to these Plaintiffs, no plausible breach is alleged.

***No Cognizable Injury***. Plaintiffs' negligence claim separately fails for lack of cognizable injury. Under Florida law, a plaintiff ordinarily must allege "physical injury or illness" before negligence may be used to redress other forms of injury. *Greenacre Props., Inc. v. Rao*, 933 So.2d 19, 25 (Fla. Dist. Ct. App. 2006); *see also Tardif v. People for the Ethical Treatment of Animals*, 829 F. Supp. 2d 1219, 1230 (M.D. Fla. 2011). Here, Plaintiffs assert only that the value of the Minors' personal data was somehow diminished by an alleged unauthorized collection. (FAC, ¶¶ 86–96, 132.) That theory is simply insufficient to support Plaintiffs' negligence claim. *See Greenacre*, 933 So.2d at 25; *Tardif*, 829 F. Supp. 2d at 1230.

***No Causation.*** "Liability for negligence depends on a showing that the injury suffered by plaintiff was caused by the alleged wrongful act or omission to act by the defendant." *Salinetro v. Nystrom*, 341 So. 2d 1059, 1061 (Fla. Dist. Ct. App. 1977). Plaintiffs allege that certain videos on YouTube were mis-designated (FAC ¶ 139), but they do not allege that the Minors actually viewed any such content—other than the bare assertion made "on information and belief." (*Id.* ¶¶ 12, 99.) Nor do Plaintiffs allege that the Minors were interacting exclusively with Disney content on YouTube, such that any alleged data collection and purported targeted advertising resulted from viewing Disney content (as opposed to other online interactions). *Salinetro*, 341 So. 2d at 1061 ("Merely to show a connection between the negligence and the injury is not sufficient to establish liability."). As Plaintiffs allege, the content available on YouTube is expansive and the internet is even larger. Therefore, any alleged data collection could have resulted from other YouTube or online activities and Plaintiffs allege no facts to establish the requisite connection with Disney. *Id.* Accordingly, the negligence claim fails on this basis as well.

### F. Plaintiffs Fail to Allege the Elements of Unjust Enrichment

Under Florida law, the elements of a claim for unjust enrichment are: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) it would be unjust for the defendants to retain it without paying the value thereof. *Chiquita Fresh N. Am., LLC v. Port Everglades Terminal, LLC*, 372 So.3d 277, 280 (Fla. Dist. Ct. App. 2023). Critically, Florida law requires that the alleged benefit be "directly" conferred by the plaintiff on the

defendant; an indirect or incidental benefit is insufficient as a matter of law. *Id.* at 281; *Kopel v. Kopel*, 229 So.3d 812, 818 (Fla. 2017).

Plaintiffs' unjust enrichment claim fails because Plaintiffs do not allege that the Minors conferred any *direct* benefit on Disney. Indeed, Plaintiffs' own allegations confirm that access to YouTube does not require any monetary payment. (FAC ¶ 25.) Plaintiffs allege that Disney earned advertising revenue through its relationship with YouTube and benefitted from data collected by YouTube and third-party advertisers. (FAC ¶¶ 37, 43–46.) The alleged benefit is therefore indirect, as it flows from intervening advertising transactions by YouTube. (*Id.* ¶¶ 30–38.) In *Kopel*, for instance, the Florida Supreme Court held that corporate executives' compensation resulting from payments the plaintiff made to a corporation, which then flowed to the executives, were indirect benefits. 229 So.3d at 818. The relationship between the alleged enrichment and the benefit to the defendant is even more attenuated here.

### G. Plaintiffs Have Not Pled a FDUTPA Claim

To state a claim under the FDUTPA, a plaintiff must allege: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *See City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. Dist. Ct. App. 2008). Plaintiffs fail to plead these elements. First, Plaintiffs do not identify any deceptive act or unfair practice by Disney. The FAC alleges only that certain videos on YouTube were mis-designated, but Plaintiffs do not allege that Disney made any representation to them, concealed any information from them, or engaged in any conduct directed at the Minors. Nor do they allege that Disney collected their data or otherwise interacted with them.

These omissions alone defeat the claim. Second, Plaintiffs fail to plead causation. They do not allege that the Minors viewed any improperly designated Disney content, when they viewed it, or how any alleged mis-designation caused the supposed injury. Without factual allegations tying Disney's conduct to any harm suffered by Plaintiffs, FDUTPA's causation requirement is not met.

Finally, Plaintiffs fail to plead "actual damages"—an essential element of a FDUTPA claim. *CMR Constr. & Roofing LLC v. Orchards Condo. Ass'n, Inc.,* No. 2:20-cv-00422-JES-MRM, 2022 WL 356043, at *2 (M.D. Fla. Feb. 7, 2022). Florida courts recognize only two measures of actual damages under FDUTPA: (1) "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered" or (2) "the total price paid for a valueless good or service." *Id.* (internal citations omitted). Here, Plaintiffs do not claim that the Minors paid Disney any money, purchased any product or service, or received anything of diminished value. They acknowledge that the Minors accessed YouTube's platform free of charge. (FAC ¶ 25.) Instead, they assert a purported loss in the "value" of personal information. (*Id.* ¶¶ 177, 179.) That is not a cognizable theory of damages under FDUTPA. *See Franklin Law Firm, P.A. v. Stacey*, No. 8:19-cv-1839-MSS-AAS, 2020 WL 10503003, at *3 (M.D. Fla. May 7, 2020) (plaintiff cannot plead actual damages if plaintiff has not paid for any product or service); *Jones v. TT of Longwood, Inc.*, No. 6:06-cv-00651-PCF-DAB, 2007 WL 2298020, at *7 (M.D. Fla. Aug. 7, 2007) (no FDUTPA claim where plaintiff did not suffer out-of-pocket losses). Even if it were,

however, Plaintiffs still fail to plead facts sufficient to establish that the "value" of their personal information was, in fact, diminished. In the context of standing, courts have recognized that conclusory allegations that data has somehow lost value are insufficient where, as here, there are no supporting allegations that a plaintiff attempted to sell data and found it less valuable. *See Manning v. Zumpano Patricios, P.A.*, No. 1:25-cv-23184-BB, 2025 WL 3062563, at *7, n.8 (S.D. Fla. Nov. 3, 2025) (diminution of value personal data theory is insufficient for standing without specific factual allegations); *DiPierro v. Florida Health Sciences Center, Inc.*, 737 F. Supp. 3d 1314, 1325 (M.D. Fla. 2024) (same).

**H. Plaintiffs' ECPA Claim Fails on Several Grounds**

The ECPA "prohibits the intentional 'interception' of 'wire, oral, or electronic communications.'" *United States v. Steiger*, 318 F.3d 1039, 1047 (11th Cir. 2003) (quoting 18 U.S.C. § 2511(1)). Notably, Plaintiffs do not allege that Disney intercepted any communications. Rather, Plaintiffs allege that "YouTube and its advertisers" intercepted communications between the Minors and the YouTube website, and that Disney "allow[ed]" and "facilitate[d]" the interception. (FAC ¶ 198, 203.) This theory fails for several reasons.

***No Secondary Liability***. The ECPA imposes liability only on the entity that intercepts the communication and does not permit vicarious liability. *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246–47 (10th Cir. 2012). Plaintiffs do not allege that Disney itself, as opposed to YouTube or another third party, "intentionally intercept[ed], endeavor[ed] to intercept, or procure[d] any other person to intercept

or endeavor to intercept, any wire, oral, or electronic communication," as required to state an ECPA claim. *See* 18 U.S.C. § 2511(1). This alone supports dismissal.

***No Contemporaneous Interception*.** The ECPA applies only to the contemporaneous interception of the contents of an electronic communication while it is in transit, *i.e.*, the interception must occur "before arrival." *United States v. Steiger*, 318 F.3d 1039, 1048 (11th Cir. 2003) The Eleventh Circuit employs a "narrow reading" of what constitutes an "interception" and requires that an interception must occur "in flight" to be actionable. *Id.* at 1050 (plaintiff must show "contemporaneous acquisition of electronic communications while in flight."). To survive a motion to dismiss, a wiretapping claim must allege facts showing that the defendant read or acquired the communication while it was en route to its destination—not before it left or after it arrived. *See, e.g.*, *Benessere Investment Group, LLC v. Swider*, No. 24-cv-21104, 2024 WL 4652090, at *4–5 (S.D. Fla. Oct. 31, 2024) (dismissing wiretapping claim for failure allege interception "contemporaneously with transmission"); *Denarii Sys., LLC v. Tellez*, 2011 WL 13322664, at *7 (S.D. Fla. 2011) (same). Here, Plaintiffs refer generally to Disney's "interception" of communications (FAC, ¶ 204), which is insufficient absent factual allegations regarding timing. *Steiger*, 318 F.3d at 1050 ("[V]ery few seizures of electronic communications from computers will constitute 'interceptions.'").

***No "Contents"***. The ECPA protects only the "contents" of communications, meaning information concerning the substance, purport, or meaning of a

communication. 18 U.S.C. § 2510(8); *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) ("contents" of a communication are the "intended message conveyed by the communication"). Plaintiffs do not allege that the "contents" of the Minors' communications were intercepted. Instead, Plaintiffs contend that YouTube, by virtue of Disney's video designations, misappropriated "browsing information and PII." (FAC ¶ 199.) But that is exactly the type of information that courts have found do not constitute the contents of a communication. *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321–22 (S.D. Fla. 2021) (dismissing plaintiffs' Florida wiretapping claim relying upon ECPA precedent because tracking movements do not constitute contents of communications); *Griffith v. TikTok, Inc.*, No. 5:23-cv-00964, 2024 WL 4308813, at *7 (C.D. Cal. Sept. 9, 2024) (non-sensitive browsing history was not contents); *King v. Hard Rock Cafe Int'l (USA), Inc.*, No. 2:24-cv-01119, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) (website clicks are not contents). This is especially true when the browsing information captured is not sensitive. *Compare W.W. v. Orlando Health, Inc.*, No. 6:24-cv-1068, 2025 WL 722892, at *5–6 (M.D. Fla. Mar. 6, 2025) (information relating to medical conditions constitutes "contents").

***Only One-Party Consent Required***. Even if Disney intercepted the contents of a communication, YouTube—a party to the communication—consented to the purported interception. The ECPA expressly permits interception where one party to the communication consents. 18 U.S.C. § 2511(2)(d); *Lucas v. Fox News Network, LLC*, No. 00-14519, 2001 WL 100181, at *4 (11th Cir. Jan. 16, 2001) (party to communication being recorded cannot violate statute). Here, the alleged interception

arises from the Minors' interactions with videos on the YouTube platform. (FAC ¶ 199.) YouTube is thus a party to the communications and consented to their collection and use. To the extent that Plaintiffs are suggesting that YouTube "intercepted" the Minors' communications with videos on the YouTube platform (*id.*), YouTube cannot intercept its own communications. *See Tanner v. Acushnet Co.,* No. 8:23-CV-00346-HDV-ADSX, 2023 WL 8152104, at *4 (C.D. Cal. Nov. 20, 2023) ("When a party to a conversation records it, that party is not eavesdropping, but rather is acting as a tape-recorder.") (internal quotations omitted); 18 U.S.C. § 2511(2)(d) (no liability for taping one's own communications).

Contrary to Plaintiffs' assertion, the crime–tort exception does not apply. *See Id.* The crime-tort exception to one-party consent applies only where the interception was "for the purpose of committing any criminal or tortious act." *Id.* Plaintiffs claim that the exception applies based upon purported violations of COPPA, but COPPA is neither a criminal statute nor a tort statute, and it creates no private right of action. 16 C.F.R. § 312 *et seq.* Courts have rejected application of the crime-tort exception in similar contexts. *See T.D. v. Piedmont Healthcare, Inc.*, No. 1:23-cv-5416, 2024 WL 3972984, at *4 (N.D. Ga. Aug. 28, 2024) (crime-tort exception inapplicable in pixel-tracking case, consistent with "weight of persuasive authority"). Moreover, Plaintiffs fail to state any viable tort claim under state law.

## II. THE DOJ SETTLEMENT MOOTS INJUNCTIVE RELIEF

Plaintiffs seek an injunction requiring Disney to delete or account for "Personal Information" allegedly collected from children on YouTube (*See, e.g.*, FAC

¶ 186), but they do not plausibly allege that Disney possesses any such information, and it does not. They also seek to enjoin future FDUTPA and ECPA violations (FAC ¶¶ 187, 205), yet the DOJ Settlement already requires video-by-video MFK/NMFK designations, an Audience Designation Program, employee training, and cessation of the challenged practices. (Luzadder Decl., Ex. B. at Sections I & II.) Thus, the injunction in the DOJ Settlement already covers all the injunctive relief that could possibly be requested or awarded in this Action. For a private plaintiff to proceed with a claim for injunctive relief, there must be "a sufficient factual basis to show the requisite ongoing or future harm exists notwithstanding the existence of injunctive relief obtained by the FTC." *In re Betterhelp, Inc.*, No. 3:23-cv-01033, 2024 WL 4504527, at *3 (N.D. Cal. Oct.15, 2024). Where a government settlement provides the same relief, courts routinely dismiss duplicative requests for injunctive relief because no ongoing or future harm is plausibly alleged. *See e.g.*, *iMortg. Servs., LLC v. Louisiana Real Estate Appraisers Bd.*, 658 F. Supp. 3d 316, 325–27 (M.D. La. 2023); *In re Pre-Filled Propane Tank Antitr. Litig.,* 893 F.3d 1047, 1054–58 (8th Cir. 2018); *Nat'l Farmers' Org., Inc. v. Associated Milk Producers, Inc.,* 850 F.2d 1286, 1309 (8th Cir. 1988). Accordingly, Disney requests that, at a minimum, the Court dismiss any claim for injunctive relief by Plaintiffs.

## CONCLUSION

For the reasons set forth above, Disney respectfully requests that the Court dismiss the FAC with prejudice.

**LOCAL RULE 3.01(g) CERTIFICATION**

Pursuant to Local Rule 3.01(g), Disney's counsel conferred with Plaintiffs' counsel by videoconference regarding the relief sought in this Motion on February 11, 2026. On February 11, 2026, counsel for Plaintiffs indicated that he opposes the relief sought herein or will alternatively seek leave to amend.

Dated this 11th day of February, 2026.

*/s/ Matthew C. Luzadder*

Matthew C. Luzadder
Florida Bar No. 11286
Kelley Drye & Warren LLP
333 W. Wacker Drive, Ste 2600
Chicago, IL 60606-2208
Tel: (312) 857-2623
mluzadder@kelleydrye.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 11, 2026, a true and correct copy of the foregoing was filed with the United States District Court, Middle District of Florida, via its CM/ECF system which will send a copy to the following counsel of record:

Phillip Kim
Pkim@rosenlegal.com
The Rosen Law Firm, PA
275 Madison Avenue 40th Floor
New York, NY 10016
Phone: 212-686-1060
Fax: 212-202-3827

Laurence Matthew Rosen
Lrosen@rosenlegal.com
The Rosen Law Firm, PA
275 Madison Avenue 40th Floor
New York, NY 10016
Phone: 212-686-1060
Fax: 212-202-3827

*/s/ Matthew C. Luzadder*
Counsel of Record