**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| YANATHA DESOUVRE, on behalf of his minor children, J.D. and A.D., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DISNEY WORLDWIDE SERVICES, INC., a corporation, and DISNEY ENTERTAINMENT OPERATIONS LLC, a limited liability company,<br><br>Defendants. | **Case No: 6:25-cv-1878-RBD-LHP** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## PRELIMINARY STATEMENT

In this action, Plaintiff Yanatha Desouvre, acting on behalf of his minor children, J.D. and A.D. ("Minor Plaintiffs"), seeks to hold Disney accountable for illegally tracking children and harvesting their data. The First Amended Complaint ("FAC") states that: (1) Defendants Disney Worldwide Services, Inc. and Disney Entertainment Operations LLC ("Disney") uploaded child-directed videos to YouTube but failed to mark them as "made for kids" ("MFK"); (2) Minor Plaintiffs watched a number of these videos; (3) the improper MFK designation on these videos enabled Disney to harvest Minor Plaintiffs' data and track their activity, in violation of the Children's Online Privacy Protection Act ("COPPA"); and 4) Disney's data collection and tracking violated federal statute, state statute, and common law.

Disney's actions were motivated not by ignorance, but by greed. Individual consumer data is an immensely valuable commodity; data obtained from children, which is harder to gain due to legal protections like COPPA but more lucrative because of the susceptibility of children to advertisements and behavioral inducements, is even more valuable. When Disney chose to mark its videos – videos aimed squarely at young children, featuring Mickey Mouse and Disney princesses – as "not made for kids" ("NMFK"), rather than the appropriate MFK, they did so because it would enable them to collect children's data, and therefore directly pad their bottom line. Disney was well aware of COPPA and of the policies that YouTube promulgated in an effort to comply with COPPA. It just didn't care.

The arguments advanced in Defendants' Motion to Dismiss speak not to any deficiencies in the FAC, but to the need for information that only Disney can provide. The complex technical aspects of the YouTube/Disney relationship, the flow of data between Minor Plaintiffs (and the putative class) and Disney, and the exact details of what information Disney collected and when are all issues that cannot be resolved on the pleadings. Disney should not be allowed to escape accountability on the grounds that Plaintiff lacks information that it holds.

Disney well knew that by misdesignating its YouTube videos, it was directing the collection of intimate data on the activities of children throughout the country, and violating COPPA in the process. The government told Disney, YouTube told Disney, and Disney's employees were reminded of it every time they created a new YouTube channel. Disney wagered that the price would be worth it; that the value of the targeted advertising the data collection enables would outweigh the risks of breaking the law. This action seeks to ensure that Disney loses that wager.

## BACKGROUND

***COPPA & the YouTube Consent Order.*** The Children's Online Privacy Protection Act was passed in 1998 for the purpose of shielding children from invasive data practices and commercial exploitation. ¶51. COPPA requires operators of online services to obtain "verifiable parental consent prior to collecting, using, and/or disclosing personal information from children." ¶48. Collecting or using such information without obtaining the required information is a violation of COPPA. *Id.* In 2019, the FTC brought an enforcement action against YouTube, and its parent

company Google, for violating COPPA. ¶52.[1] The FTC alleged that YouTube knowingly collected the personal information of minors and tracked their internet activity. *Id.* To settle the case, YouTube agreed to pay a $170 million fine and implement broad changes to its platform to comply with COPPA, including requiring content creators to designate whether uploaded videos are "made for kids." ¶54.

Since November 2019, when the changes were implemented, YouTube has operated a compliance framework in which it largely delegates COPPA compliance mechanics to content creators. ¶59. Under YouTube's system, content creators are required to designate each video they upload as either MFK or NMFK. ¶¶57-60. The creators may apply this designation on either a per-video or per-channel basis. ¶¶63-64. Designating a video as MFK disables a host of features that would otherwise run afoul of COPPA should they be activated on videos watched by children, including the collection of viewing history and personal information, as well as the showing of targeted and personalized ads that this data collection facilitates. ¶¶60-61. YouTube has explicitly warned Disney that the failure to set their content accurately may lead to legal liability and compliance issues. ¶67.

***The FTC Action.*** On September 2, 2025, the DOJ, upon notification from the Federal Trade Commission ("FTC"), filed a complaint against Disney in the Central District of California. ¶82. The complaint revealed that, despite YouTube and the government's warnings, Disney had been consistently marking videos directed toward

[1] All citations to "¶" are to the Amended Class Action Complaint, Dkt. No. 20 in this matter.

children as NFMK rather than MFK, thereby enabling the COPPA-violating tracking systems on those videos' webpages. ¶81. Disney was therefore tracking the activity of children who watched their videos, and targeting ads toward them based on the information collected. ¶¶70, 74. Disney had a strong incentive to do so – it collects far higher advertising revenue by serving kids targeted ads, rather than generic ones. ¶37. Disney ultimately paid the FTC $10 million to settle the claims. *See United States of America v. Disney Worldwide Servs., Inc. et al.*, No. 2:25-cv-08223-GW-RAO (Dkt. 25).

***Plaintiff and the Putative Class.*** Plaintiff Yanatha Desouvre brings this action on behalf of his two minor children, J.D. and A.D, as well as on behalf of a putative class of all those who had their privacy invaded by Disney's illegal data collection. ¶1. Between 2019 and September 2, 2025, Minor Plaintiffs viewed videos uploaded to Disney's YouTube channels at least twice weekly, including videos that were clearly directed at children but were not marked as MFK. ¶¶98-99. Mr. Desouvre did not consent to having his children's personal data collected, and would not have let his children watch the videos had he known that Disney was tracking them. ¶¶100-103.

## ARGUMENT

### I. THE FAC STATES A CLAIM

Under Fed. R. Civ. P. 8(a)(2), a complaint must include a "short and plain statement of [a] claim showing that the [plaintiff] is entitled to relief." The standard does not require "detailed factual allegations", but the complaint should "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-570 (2007)). At the motion to dismiss stage, the Court is required to "accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019). Here, the FAC states a claim on all six causes of action.

**a. Plaintiff alleges that the Minors watched misdesignated videos.**

The FAC alleges that "Minor Plaintiffs accessed Disney's channels via the YouTube platform and viewed child-directed content at least twice weekly between 2019 and September 2, 2025." ¶98. The FAC further alleges that the misdesignated videos were spread over a large variety of YouTube channels, including Pixar, the Disney Channel, and Disney Animation Studios; they were not cabined to a particular niche that Minor Plaintiffs could theoretically have avoided. ¶75. As such, it is not just plausible that Minor Plaintiffs viewed many of the misdesignated videos – and therefore had their data improperly collected – but almost certain.

Much of the information that Defendants claim the FAC is missing, such as the names of the precise videos that Defendants misdesignated, is held by Disney itself, and is therefore properly the subject of discovery. Moreover, provided that Minor Plaintiffs watched the misdesignated videos, which the FAC alleges that they did, it is a foregone conclusion that their personal information was collected, because viewer data is collected by default. ¶36. There is no space between the two allegations.

**b. Plaintiff need not specify the governing state law.**

Plaintiff is a citizen of Florida, bringing claims in a Florida court, against Floridian Defendants, about matters that occurred in Florida. There can be no

confusion as to which state's laws the claims are brought under. The only in-circuit case cited by Defendants is inapposite because the plaintiffs in that matter brought statutory claims under the laws of multiple states, thereby leading to potential confusion as to which state the common law claims were brought under. *See Boxy, LLC v. Jay at Play Int'l Hong Kong, LTD*, No. 20-80893-CIV, 2021 WL 1226388 (S.D. Fla. Mar. 31, 2021). That is not the case here. The Court is permitted to draw "to draw on its experience and common sense" in determining that Plaintiff's claims are brought under Florida law. *Ashcroft*, 556 U.S. at 664 (citation omitted). Indeed, the fact that Defendants understood the FAC to invoke Florida law is strong evidence to that effect.

**c. Plaintiff states a claim for intrusion upon seclusion.**

"An intrusion claim has three elements. First, there must be a private quarter. Second, there must be some physical or electronic intrusion into that private quarter. Third, the intrusion must be highly offensive to a reasonable person." *Stasiak v. Kingswood Co-op, Inc.*, No. 8:11-CV-1828-T-33MAP, 2012 WL 527537, at *2 (M.D. Fla. Feb. 17, 2012) (citation omitted). The FAC alleges all three elements of this claim.

***Intrusion Into a Private Quarter.*** A quarter is considered "private" if the occupant has a reasonable expectation of privacy in said quarter. *Jackman v. Cebrink-Swartz*, 334 So. 3d 653, 656-7 (Fla. Dist. Ct. App. 2021). Due to COPPA and the existing consent order against YouTube, which unambiguously bar the sort of tracking that Disney engaged in, Mr. Desouvre had a reasonable expectation that his children would not

have their web browsing and device activity tracked while watching Disney's videos. ¶¶47-67. As such, Minor Plaintiffs' devices are considered a private quarter.

Defendants attempt to draw a distinction between "place" and "activity", but their reliance on *Watts* (and *W.W.*, which follows *Watts*) is misplaced, as "[t]he *Watts* court found no "place" to be implicated… because it found the plaintiff had no reasonable expectation of privacy in the *location* of that information—a database owned by the state." *W.W. v. Orlando Health, Inc.*, No. 6:24-CV-1068-JSS-RMN, 2025 WL 722892, at *9 (M.D. Fla. Mar. 6, 2025) (citing *Watts v. City of Hollywood*, 146 F. Supp. 3d 1254, 1267 (S.D. Fla. 2015)). Here, Plaintiffs did have that reasonable expectation of privacy, due to the explicit provisions of COPPA.

Defendants' citation to this Court's decision in *Bradley* is similarly misplaced; in *Bradley*, the plaintiff alleged that the tortfeasors viewed her medical records at the hospital (that is, they contained her private information, but they were not *hers*); here, Defendants intruded electronically into Minor Plaintiffs physical electronic devices. ¶¶34-35; *Bradley v. City of St. Cloud*, No. 6:12-CV-1348-ORL-37, 2013 WL 3270403, at *4 (M.D. Fla. June 26, 2013). This states a *prima facie* claim for intrusion upon seclusion under the precedent set out by the Florida Supreme Court in *Allstate Ins. Co. v. Ginsberg*. 863 So.2d 156, 162 (Fla. 2003) ("physically or electronically intruding into one's private quarters"). Indeed, this technical understanding of the tort comports well with the *Ginsberg* court's more general statement that the tort's "focus is the right of a private person to be free from public gaze." *Id.*

***Highly offensive.*** While there is no directly controlling case law, "other jurisdictions that apply the same common law principles as Florida regarding invasion of privacy have found the intentional interception of another's email to be sufficiently offensive." *Stirling Int'l Realty, Inc. v. Soderstrom*, No. 6:14-CV-1109-ORL-40T, 2015 WL 403318, at *6 (M.D. Fla. Jan. 28, 2015) (collecting cases). Here, while the FAC does not allege that emails were intercepted, it does allege that Disney intercepted analogous electronic communications. ¶*199.* Furthermore, at least one court has held that surreptitiously collecting data from minors is *prima facie* offensive. *A.B. by & Through Turner v. Google LLC*, 737 F. Supp. 3d 869, 884 (N.D. Cal. 2024).

**d. The FAC adequately alleges that Disney trespassed upon the Minors' chattel.**

Under Florida law, a trespass to chattels claim is applicable to digital data and cyberspace. *See Klein v. Oved*, No. 9:22-CV-80160-KAM, 2022 WL 4772399, at *6 (S.D. Fla. Aug. 19, 2022) ("Without any word from Florida courts stating this claim is not viable, however, the Court is inclined to let this count proceed."). Although the precise definition of trespass to chattels varies by state, courts around the country are generally in accord. *See e.g. State Analysis, Inc. v. Am. Fin. Servs. Assoc,* 621 F. Supp. 2d 309, 320 (E.D. Va. 2009); *Jedson Eng'g, Inc. v. Spirit Const. Servs., Inc.*, 720 F. Supp. 2d 904, 925-27 (S.D. Ohio 2010).

More to the point, Defendants did not just trespass on Minor Plaintiffs' data – they trespassed on the physical devices that Minor Plaintiffs watched their videos on, which are chattels by any definition of the term. ¶¶25, 35. *See Flagstone Island Gardens,*

*L.L.C. v. Ser*, No. 11-21865-CIV, 2011 WL 13223685, at *6 (S.D. Fla. Sept. 13, 2011) ("Plaintiff's server certainly qualifies as a chattel which can be subject to trespass"). *Burshan v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, is therefore distinguishable. 805 So. 2d 835 (Fla. Dist. Ct. App. 2001). In *Burshan*, the court ruled that a bank account is not a chattel which can be the subject of a trespass because it is not a "thing[] movable." *Id.* at 846. The electronic devices on which Minor Plaintiffs watched the videos in questions are certainly "things movable;" they can be taken from one place to another. As such, under *Burshan,* Disney trespassed on Minor Plaintiffs' chattel.

Furthermore, in *Dish Network LLC v. Fraifer*, the counterclaimants failed to allege that the device hosting the URLs belonged to them in the first place. No. 8:16-cv-02549, 2017 WL 3701141, at *2 (M.D. Fla. July 21, 2017). Finally, in *Bain v. Jockey Club Tech. Servs., Inc.*, the plaintiffs did not respond to the motion to dismiss the trespass claim, leaving it forfeit to the defendant's arguments. No. 9:07-cv-80371, 2007 WL 9706994, at *4 (S.D. Fla. Oct. 2, 2007). As to Defendants' contention that their conduct was unintentional, this is unsupported. Plaintiff alleges in detail throughout the FAC that Disney acted intentionally throughout its course of conduct. ¶¶73, 79, 80, 202. As such, the FAC adequately states a claim for trespass to chattels.

**e. Plaintiff adequately pleads each element of his negligence claim.**

Under Florida law, a negligence claim requires four elements: a duty, breach of that duty, causation, and damages. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012) (citations omitted). The FAC adequately alleges all four.

***Legal Duty and Breach.*** "Duty… may arise from: (1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments and regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case." *Zinn v. United States*, 835 F. Supp. 2d 1280, 1311 (S.D. Fla. 2011). Here, duty arises from all the above. Florida judicial precedent (the "undertaker doctrine") states that "[w]henever one undertakes to provide a service to others… [he] assumes a duty to act carefully and to not put others at an undue risk of harm." *Id.* at 1312. By providing Minor Plaintiffs with videos to watch ("a service to others"), Disney assumed a duty not to put them at an undue risk of harm. ¶¶98-99. Then, by marking the relevant videos as NFMK - thereby tracking Minor Plaintiffs and subjecting them to behavioral advertising - Disney breached that duty. ¶3. As such, Plaintiff adequately alleges duty and breach under existing judicial precedent.

Furthermore, "[f]ederal courts in Florida have well established that entities which collect sensitive, private data from consumers and store such data on their networks have a duty to protect the information." *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1222 (S.D. Fla. 2022). As such, entities with access to sensitive, personal data must have a duty not to collect and misuse it themselves – otherwise, such entities would not be liable for miscollection and misuse of data if they did it themselves, but only if a third party did it.

In addition, the FAC expressly alleges that Disney – not YouTube - directed the collection of data. ¶¶44, 55-59. Defendants cite *Hubbard v. Google LLC*, in which the Court dismissed the claims against the channel owners, reasoning that YouTube was

the party that directed the collection of the data, rather than the channel owners. No. 19-CV-07016-SVK, 2025 WL 82211, at *17 (N.D. Cal. Jan. 13, 2025) ("Plaintiffs point to no allegations supporting this contention that the Channel Owners directed Google's data collection"). At the time, this was true, but after (and as a result of) the consent order that was the subject of *Hubbard*, YouTube revamped its policies, putting the onus on channel owners to decide whether to activate data collection through the MFK marking system. ¶¶57-60. It is now channel owners like Disney that direct the collection of data; YouTube purposefully withdrew itself from that duty. ¶¶57-60. As such, under the reasoning espoused in *Hubbard*, Disney is the collector, not YouTube.

Finally, in the alternative, Disney owed a duty to Minor Plaintiffs under a theory of *negligence per se*. In Florida, "[t]he elements of negligence per se are: (1) violation of a regulation; (2) causing the type of harm that the regulation was intended to prevent; and (3) injury to a member of the class of persons intended to be protected by the regulation." *Lemma Ins. (Eur.) Co. v. Rumrunner Sport Fishing Charters, Inc.*, No. 8:11-CV-2110-T-33TBM, 2012 WL 254134, at *2 (M.D. Fla. Jan. 27, 2012). Disney's violations of both the Wiretap Act and FDUTPA fulfill all three of these elements; as such, Disney is liable to Plaintiff under a theory of *negligence per se.*

***Injury.*** The "impact rule" cited by Defendants is not relevant to the instant claim, as the rule is only "applicable to cases in which the plaintiff claims mental or emotional damages." *Willis v. Gami Golden Glades, LLC*, 967 So. 2d 846, 850 (Fla. 2007) The rule is "traditionally applied primarily as a limitation to assure a tangible validity of claims for emotional or psychological harm." *Rowell v. Holt*, 850 So. 2d 474, 478

(Fla. 2003). Here, Minor Plaintiffs allege that they suffered economic harm as well. ¶¶89-94. The rule is therefore inapposite.

***Causation.*** Defendants' arguments as to causation do not logically follow. First, Minor Plaintiffs do indeed allege that they watched the videos in question; indeed, it would be nearly impossible to avoid them, considering their considerable number and dispersion throughout Disney's channels. ¶¶75-81. Second, the data could only have been collected by Disney, because there is no evidence that any other channel owner was violating COPPA. Third, the suggestion that other bad actors on the Internet could theoretically have harvested the Minor Plaintiffs data is both speculative and irrelevant. The FAC plainly states that Disney collected Minor Plaintiffs data and then used it to target advertisements to them. ¶12. The causal link is not complex.

**f. Plaintiff states a claim for unjust enrichment.**

In arguing that Minor Plaintiffs did not confer a direct benefit on Disney, Defendants misunderstand both *Kopel v. Kopel* and the concept of a direct benefit. 229 So.3d 812, 818 (Fla. 2017). The word "direct" in the term "direct benefit" does not refer to the path that the benefit (here, advertising revenue) takes – it is of no moment if the benefit is funneled through intermediaries, such as YouTube or payment processing companies. *See Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269, 1288 (S.D. Fla. 2013) (writing that "there are several recent cases in this district that permit an unjust enrichment claim to stand where the benefit is conferred through an intermediary" and collecting cases in support); *Cape, LLC v. Och-Ziff Real Est. Acquisitions LP*, 370 So. 3d 1010, 1017 (Fla. Dist. Ct. App. 2023) ("[i]t would not serve

the principles of justice and equity to preclude an unjust enrichment claim merely because the 'benefit' passed through an intermediary"). Rather, the requirement is that at the end of that path, it the benefit is conferred *directly upon* the defendant, rather than a third party – because then it is that third party that is unjustly enriched, regardless of if the defendant received an *indirect benefit* in the process.[2]

In *Kopel*, the court held that the benefit in question did not flow to the defendants, but flowed "indirectly to corporations owned by them." 229 So. 3d at 818. In essence, the wrong party was being sued – the owners of the corporations, rather than the corporations themselves. That is not the case here; the Defendant is Disney, not its shareholders. The FAC alleges that Disney received the benefit of the unjust collection of Minor Plaintiffs data. ¶148-150. It does not allege that YouTube was the beneficiary. Defendants do not challenge, and therefore concede, that the other elements of the claim are met. As such, the FAC states a claim for unjust enrichment.

**g. Plaintiff adequately alleges that Disney violated FDUTPA.**

***Unfair or Deceptive Act.*** FDUPTA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." § Fla. Stat. 501.204. An unfair practice is "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (citations and quotations omitted).

---

[2] Of note is that whether a direct benefit is conferred is considered "a question of fact that cannot be resolved at the motion to dismiss stage." *Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1237 (S.D. Fla. 2015) (citations and quotations omitted).

A deceptive act "is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Muy v. Int'l Bus. Machines Corp.*, No. 4:19CV14-MW/CAS, 2019 WL 8161749, at *4 (N.D. Fla. Nov. 25, 2019) (citation omitted). Disney's illegal collection of children's personal data is both an unfair practice and a deceptive act under FDUTPA.

"Courts have held that the failure to adequately secure Personal Information may qualify as an actionable 'unfair practice' under the FDUTPA." *Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1190 (M.D. Fla. 2022) (citation omitted). Here, Disney did not just fail to adequately secure Minor Plaintiffs' personal information, but took affirmative steps to improperly collect it and use it to serve Minor Plaintiffs' targeted ads. ¶¶68-70. This is immoral, unethical, and definitively offends public policy as embodied in COPPA; as such, it is an unfair practice under FDUPTA. *See PNR, Inc.*, 842 So. 2d at 777. Fittingly, COPPA itself defines a violation of the rule as an unfair act or practice. 15 U.S.C. § 6502(c).

Furthermore, Disney's collection of Minor Plaintiffs' data is as deceptive as it is unfair. Plaintiff allowed his children to view Disney's videos under the proper assumption that Disney was complying with COPPA, rather than willfully violating it. ¶¶100-103, 174. As such, Disney's violations of COPPA are a textbook deceptive act under FDUPTA. *See A.B. by & Through Turner v. Google LLC*, 737 F. Supp. 3d at 883 (applying Florida law and writing that "[b]y making consumers feel as though children's personal information was not being collected… defendants encouraged plaintiffs to download and use the [apps]").

***Causation***. As discussed *supra*, the FAC alleges that Disney's illegal data collection directly caused the Minor Plaintiffs harm. ¶¶12, 83, 85, 94, 99-100.

***Damages.*** The FDUTPA "actual damages" requirement is satisfied where a plaintiff alleges "an actual injury in the form of insufficient product value. In other words, she contends that she did not get what she bargained for." *Collins v. DaimlerChrysler Corp.*, 894 So. 2d 988, 990–91 (Fla. Dist. Ct. App. 2004). That is precisely what Plaintiff contends here. The bargain in this matter is simple: Disney offered Plaintiff age-appropriate videos for his children to watch, with the implicit promise that these videos were not of the activity-tracking variety, as required by COPPA. ¶85. In return, Minor Plaintiffs offered Disney their attention to the ads played during those videos. ¶98. Plaintiff did not bargain for videos that would track his children, which are inferior products. ¶¶100-103.

The difference in market value between these two products is the proper measure of damages under FDUTPA. *See Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1339 (S.D. Fla. 2009) ("the measure of actual damages under [FDUTPA] is the difference in the market value of the product or service in the condition in which it was delivered and… in which it should have been delivered"); *Collins,* 894 So.2d at 990 ("Florida courts have allowed diminished value to serve as 'actual damages' recoverable in a FDUTPA claim"). That Minor Plaintiffs paid with eyeballs rather than dollars is immaterial. Minor Plaintiffs paid with their data and their attention,

both of which are a *de facto* currency that can be traded in for goods and services at will. ¶¶89-93. There is no requirement in FDUTPA that payment be made in dollars.

In addition, there is an alternative measure of actual damages under FDUTPA. Personal data has a market value. ¶¶89-93. Disney's misappropriation of Minor Plaintiffs' data has caused it to diminish in value, should they wish to sell it in the future. ¶89. As such, the difference in the market value of the data before and after Disney's taking is a cogent measure of actual damages. *Cf. Brown v. Google LLC,* No. 20-CV-03664-LHK, 2021 WL 6064009, at *15 (N.D. Cal. Dec. 22, 2021) (finding economic injury under California law because "it is plausible that Plaintiffs will decide to sell their data at some point"). Under either theory, the FAC adequately pleads that Minor Plaintiffs have suffered actual damages.

Finally, even if Plaintiff fails to plead actual damages, the FDUTPA claim still survives because Plaintiff seeks injunctive relief. *See Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1191 (M.D. Fla. 2022) ("[i]n the absence of actual damages, the FDUTPA permits any 'aggrieved party' to pursue injunctive relief") (citation omitted).

**h. Plaintiff adequately alleges that Disney violated the ECPA.**

"The Wiretap Act generally prohibits the unauthorized interception of electronic communications and the intentional disclosure or use of the contents of an intercepted communication." *W.W.*, 2025 WL 722892, at *6 (citing 18 U.S.C. § 2511(1). The FAC alleges that Disney intentionally intercepted Minor Plaintiffs' communications without authorization. ¶202. This is enough to state a claim for a

violation of the Electronic Communications Privacy Act (the "Wiretap Act"), and Disney's myriad arguments to the contrary are unavailing. *See* 18 U.S.C. § 2511(1).

***Primary Liability.*** Although the FAC does allege that Disney intercepted Minor Plaintiffs' communications, it is immaterial whether it was Disney, YouTube, or both that intercepted them, because the ECPA bars a party from "procur[ing] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C.A. § 2511(1)(a). 18 U.S.C. § 2520 further creates civil liability for any party that violates 18 U.S.C.A. § 2511. *See Lonegan v. Hasty*, 436 F. Supp. 2d 419, 428 (E.D.N.Y. 2006). The FAC alleges that, by failing to mark certain videos as "MFK", Disney affirmatively directed YouTube to collect data from children. ¶¶66, 68-74, 84-85. Furthermore, Disney had the exclusive right to direct the data collection; under YouTube's content management system, it was Disney's call to make. ¶¶59, 68. As such, Plaintiff does indeed allege that Disney "procure[d] any other person" to intercept Minor Plaintiffs' communications. 18 U.S.C.A. § 2511(1)(a).

In addition, *Kirch v. Embarq Mgmt. Co.* is misapplied by Defendants. 702 F.3d 1245 (10th Cir. 2012). In *Kirch*, the court held that there is no aiding-and-abetting liability under the civil liability provision of the ECPA. *Id.* at 1246-47. Here, Disney is not an aider or abettor, it is the principal directing the interception in itself –YouTube would be the aider or abettor. Its application here is therefore precisely backwards.

***Contemporaneous Interception.*** The question of whether the communications at issue here were intercepted in transit is highly technical and therefore not susceptible to resolution on the pleadings. *See D.S. v. Tallahassee Mem'l HealthCare*, No.

4:23CV540-MW/MAF, 2024 WL 2318621, at *1 (N.D. Fla. May 22, 2024) (declining to consider "whether… the information is 'in transmission' or instead retrieve[d]… from servers" at the motion to dismiss stage). That said, the FAC plainly alleges that Disney (or YouTube, acting at Disney's direction) intercepted the communications. ¶¶199. Furthermore, the FAC generally alleges that the communications were collected *from Minor Plaintiffs*, not from some sort of repository; as such, the only way for Disney to acquire them is by interception. ¶¶81-84. As such, the FAC plausibly alleges that the communications were intercepted contemporaneously.

***"Contents" Intercepted.*** Defendants rely on *Goldstein v. Costco Wholesale Corp*. for the principle that Minor Plaintiffs' viewing history, user activity, web searches, and content interactions are not considered "contents" under the ECPA. 559 F. Supp. 3d 1318 (S.D. Fla. 2021); ¶35. However, in *Goldstein,* "Defendant utilized 'session replay' spyware to intercept Plaintiff's… communications with Defendant's website." *Id.* at 1320. This precedent is "not persuasive because Plaintiff's claims are predicated on the tracking tools' interception of her communications… not on the simple fact that her movements on Defendant's website were tracked." *W.W.,* 2025 WL 722892, at *3. There is a well-recognized distinction between the kind of session replay software used in *Goldstein* and the sort of interception alleged here, and courts consistently uphold the latter as violative of the ECPA. *See id.* at *4-5 (distinguishing session replay cases because defendants intercepted "the URL visited, the medical conditions and types of doctors searched", and collecting cases in accord); *Makkinje v. Extra Space Storage, Inc.,* No. 8:21-CV-2234-WFJ-SPF, 2022 WL 80437 at *1 (M.D. Fla. Jan. 7, 2022)

(distinguishing session replay cases because defendants "recorded more than just [plaintiff's] non-substantive browsing movements"); *Saleh v. Nike, Inc.,* 562 F. Supp. 3d 503, 517-18 (C.D. Cal. 2021) (distinguishing *Goldstein* because defendants captured, *inter alia,* "keystrokes, geographic location, IP addresses, and data entry").

Here, the FAC does not allege the use of session replay software. Rather, Disney intercepted Minor Plaintiffs' "viewing history, user activity (searches run, views and interactions with content and ads, etc.), location information… and unique identifiers." ¶35. It would therefore be unreasonable to infer that none of the intercepted information was "content" as defined in the ECPA. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.,* 806 F.3d 125, 139 (3d Cir. 2015) ("Because the complaint pleads a broad scheme in which the defendants generally acquired and tracked the plaintiffs' internet usage, we are satisfied that it… involved the collection of at least some 'content' within the meaning of the Wiretap Act.").

***Party Consent & the Crime-Tort Exception.*** The ECPA's party exception is not material here, for three reasons. First, YouTube did not consent to receive the communications at issue – rather, they expressly directed Disney to mark their videos correctly and prevent any COPPA-violative data from being transmitted. ¶56. Second, Disney intercepted communications between Minor Plaintiffs, their web browsers, and other websites. ¶¶34, 199. Neither YouTube nor Disney were party to those communications. *Cf. In re TikTok, Inc. In-App Browser Priv. Litig.*, No. 24 C 2110, 2024 WL 4367849, at *12 (N.D. Ill. Oct. 1, 2024) (holding that TikTok was not a party to the communications where it tracked the plaintiffs' movements across other websites).

Third, the ECPA's "crime-tort exception" applies here, rendering the identities of the relevant parties moot. Under the crime-tort exception, even a party to the communication may be liable if the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any [s]tate." 18 U.S.C. § 2511(2)(d). Disney intercepted Minor Plaintiffs' communications for the purpose of violating COPPA, FDUTPA, and state common law. ¶202. As such, the crime-tort exception applies, even if YouTube or Disney were parties to each of the intercepted communications (which they were not). *See W.W.,* 2025 WL 722892, at *7 ("The court finds no basis in the text of the Wiretap Act's crime-tort exception to conclude that these allegations are insufficient.").

## II. INJUNCTIVE RELIEF

Where a party challenges injunctive relief on grounds of mootness, it shoulders a "heavy burden." *Lutrario v. City of Hollywood, Fla.,* 683 F. Supp. 3d 1361, 1367 (S.D. Fla. 2023) (citation omitted). Disney does not meet that burden. The DOJ Settlement does not require Disney to delete the data collected from the affected children; as such, the conduct in question has not yet ceased. Injunctive relief is therefore necessary to prevent Disney from continuing to misuse the Minor Plaintiffs' data.

## CONCLUSION

For the reasons above, the Court should deny Defendants' Motion to Dismiss in its entirety. Plaintiff further requests that, should the Court dismiss any cause of action, he be granted leave to replead.

Dated: March 4, 2026

/s/ *Laurence Rosen*

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen
Fla. Bar No. 0182877
Phillip Kim (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: philkim@rosenlegal.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 4, 2026, a true and correct copy of the foregoing was filed with the United States District Court, Middle District of Florida, via its CM/ECF system, which will send a copy to all counsel of record.

/s/ Laurence Rosen
Counsel of Record